# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY RAY SPEARS,

      Plaintiff,

          v.

JOSEPH A. CURCILLO, III, *et al*.,

      Defendants.

NO. 1:13-CV-3053

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is a Motion for Summary Judgment (Doc. 83) filed by the remaining Defendants in this action: Warden Dominick DeRose ("DeRose") and Corrections Officer Gerald Walton ("Walton") (collectively "Defendants"). Following motions to dismiss the Complaint and Amended Complaint, Plaintiff Anthony Ray Spears ("Spears") was allowed to proceed with two causes of action: (1) a Fourth Amendment claim against DeRose for the thrice-daily visual body-cavity searches; and (2) an Eighth Amendment claim against Walton for the March 27, 2013 visual body cavity search. Because Spears failed to exhaust his administrative remedies with respect to both claims, summary judgment will be granted in favor of Defendants.

## I. Background

The facts are derived from Defendants' Statement of Material Facts, (Doc. 84, "Defs.' SMF"), and supporting exhibits. (Docs. 84-88).[1] The events relevant to the

---

[1]     Local Rule 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issue for trial. *See id*. Unless otherwise noted, the factual background herein derives from Defendants' Rule 56.1 statement of material facts. Spears did not file a response to Defendants' statement of material facts, so the facts set forth by Defendants are deemed undisputed. *See* M.D. Pa. L.R. 56.1.

remaining claims in this action occurred between March and May 2013 while Spears was incarcerated at the Dauphin County Prison, where DeRose was the Warden and Walton was a Corrections Officer. (*See* Defs.' SMF, ¶ 9; *see also* Spears' Dep., 4:12-16, 23:23-25:1, 37:16-40:9).

On March 3, 2013, Spears removed a metal bar from a desk in his cell and began to chisel a hole in the cinder block wall of his cell. (*See* Defs.' SMF, ¶ 12). Spears threatened to kill his cellmate's family when he escaped unless his cellmate kept quiet about the escape plan. (*See id*. at ¶ 19). Spears' cellmate reported the plan on March 5, 2013. (*See id*. at ¶ 20). Spears was charged with, and ultimately pled guilty to, escape and witness intimidation. (*See id*. at ¶ 21).

From March 5, 2013 until Spears was transferred to state prison on May 7, 2013, he was subjected to visual cavity searches once per shift, *i.e.*, three times per day. (*See id*. at ¶¶ 22-23, 26; *see also* Spears Dep., 36:21-37:15). During this time, Spears was in "segregation" for the first five days, and the remainder of the time he was in the restricted housing unit ("RHU"). (*See* Spears Dep., 37:6-15).

Prior to the discovery of Spears' attempted escape, he had an extensive disciplinary record. (*See* Defs.' SMF, ¶¶ 28, 32-33). Spears had been found guilty of group insurrection once, assault twice, fighting three times, threatening another with bodily harm twice, narcotics consumption twice, contraband 21 times, inappropriate behavior 11 times, disruptive behavior 34 times, and destroying property 17 times, as well as a number of lesser infractions. (*See id*. at ¶¶ 33, 37).

During the time Spears was subject to thrice-daily visual body-cavity searches, he was found guilty of contraband twice, destroying property three times, and disruptive behavior once. (*See id*. at ¶ 42).

On the evening of March 26, 2013, mattress stuffing was put in the toilet in Spears' cell. (*See id*. at ¶ 44). Although Spears claims it was done by an unidentified corrections officer, he was later found guilty of infractions related to this incident. (*See id*. at ¶¶ 44, 47). The following morning, Walton accompanied maintenance

while they unclogged the toilet, and he believed that Spears destroyed his mattress and intentionally clogged the toilet. (*See id*. at ¶¶ 45-46). Walton strip searched Spears after maintenance left. (See id. at ¶ 48). The search lasted less than three minutes. (*See id*. at ¶ 49). Spears was not strip searched twice during that shift. (*See id*. at ¶ 50). Walton, according to Spears, made "very rude and disrespectful comments" towards him during the search, including that he was a "little dick faggot" that was "always causing problems" and was "going to get raped when I go upstate." (Spears Dep., 42:13-14, 43:7-9). Walton was alleged to have put some of Spears' clothing in toilet water that was on the floor. (*See* Defs.' SMF, ¶ 52).

The Dauphin County Prison has an inmate grievance procedure, a process which Spears was familiar with. (*See id*. at ¶ 55). The process first requires the inmate to "write out the complete grivance being as brief but as specific as possible soon after the alleged occurrence." (*Id*. at ¶ 56). The grievance must be submitted to the Warden, Deputy Warden, or a Security Major. (*See id*. at ¶ 57). If the grievance is denied, the inmate can appeal to the Chairman of the Dauphin County Prison Board of Inspectors. (*See id*. at ¶ 58). A further appeal can then be taken to the full Prison Board. (*See id*. at ¶ 59). Finally, an appeal from the full Prison Board can be taken to the Dauphin County Solicitor. (*See id*. at ¶ 60).

Following the March 27, 2013 incident with Walton, Spears filed a grievance concerning Walton's actions of throwing his clothing in toilet water. (*See id*. at ¶¶ 63-69). Spears did not complain in that grievance about Walton's statements during the March 27, 2013 strip search. (*See id*. at ¶ 69). Captain Neidigh recommended that the grievance be denied, and DeRose signed off on this recommendation. (*See id*. at ¶¶ 71-72).

Spears appealed to the Prison Board Commissioner, Jeffrey Haste ("Haste"). (*See id*. at ¶¶ 73-75). Spears made no reference to Walton's comments during the strip search in that appeal. (*See id*. at ¶¶ 75-77). Haste denied the appeal. (*See id*. at ¶ 78). Spears appealed the denial to the full Prison Board, but the Board denied the appeal.

(*See id*. at ¶¶ 79-84). Spears proceeded to appeal the denial to the Dauphin County Solicitor, noting that he was complaining of his property being tossed in toilet water. (*See id*. at ¶¶ 85-87). Before the Solicitor responded, Spears commenced the instant litigation. (*See id*. at ¶ 90). The Solicitor subsequently denied the grievance. (*See id*. at ¶ 91).

Spears also filed a grievance about being strip searched three times per day. (*See id*. at ¶ 94). DeRose denied that grievance on April 2, 2013. (*See id*. at ¶ 95). Spears appealed the denial of that grievance to Haste, but he did not address the frequency of the strip searches in his appeal. (*See id*. at ¶ 96; *see also id*. at Exs. "91"- "92"). Haste denied Spears' appeals. (*See id*. at ¶ 97; *see also id*. at Exs. "92"-"93"). Spears appealed Haste's denial to the Prison Board. (*See id*. at ¶ 98). Therein, Spears referenced a number of issues raised in prior grievances, including "strip-searched 3x a day." (*See id*. at Ex. "94"). The Prison Board denied the appeal. (*See id*. at Ex. "95"). Spears filed an appeal to the Solicitor, noting that the Prison Board did "not address the issues of all the searches." (*Id*. at Ex. "96"). That appeal was denied by the Solicitor. (*See id*. at Ex. "97").

In addition, Spears filed a grievance, which he identified as grievance number 31, on April 7, 2013 regarding being woken up at night to have his person and cell searched. (*See id*. at Ex. "86", 37). DeRose denied the grievance, stating that the "intrusions are necessary due to your past behavior and escape attempt." (*Id*. at Ex. "98"). Spears appealed to Haste because his "complaint was not addressed, that being sleep deprivation." (*Id*. at Ex. "84", 46). That appeal was denied by Haste on July 2, 2013. (*See id.* at Ex. "87", 4). This denial was appealed to the Prison Board. (*See id*. at Ex. "84", 55-56). In reference to grievance number 50, Spears complained of the number of strip searches, noting that he had 139 cavity searches in less than two months. (*See id*.). But, absent from the record is a grievance number 50 submitted by Spears. (*See id*. at ¶ 106). The Prison Board denied this appeal on September 4, 2013. (*See id*. at Ex. "88"). Specifically, with respect to the appeal from Commissioner

4

Haste's denial of the "complaint regarding the searches of your cell and person," the Prison Board explained:

> In your underlying grievance and appeal to Commissioner Haste, you limited your complaint to searches that occurred late at night. Your complaint was that the searches interrupted your sleep time. As this is what you complained of and appealed, any other complaints regarding times of searches is not ripe for review. . . .
>
> Because your appeal complains about circumstances not included in your grievance, I find that these complaints are not ripe for review and therefore the Prison Board has directed that your grievance appeal be denied.

(*Id*. at Ex. "88", 9). Spears proceeded to appeal that denial to the Solicitor. (*See id*. at ¶ 107). With respect to the frequency of the strip searches, Spears referenced grievance number 31, stating that the searches were unreasonable and "Haste addressed this issue & I was forced to refute his findings which raised a further claim." (*Id*. at Ex. "84", 60). The Solicitor denied the appeal on January 16, 2014, and as to grievance number 31 which raised the issue of being woken at night for strip searches, the Solicitor stated that the searches were justified based on Spears' past behavior. (*See id*. at Ex. "90").

Spears commenced this action against thirty-one individuals on December 19, 2013. (*See* Doc. 1, *generally*). Spears subsequently filed an Amended Complaint against twenty-eight Defendants. (*See* Doc. 56, *generally*). Following disposition of a motion to dismiss the Amended Complaint, Spears was left with two claims: (1) a Fourth Amendment claim against DeRose for the thrice-daily visual body-cavity searches; and (2) an Eighth Amendment claim against Walton for the March 27, 2013 visual body cavity search. (*See* Docs. 65-66, *generally*).

On October 23, 2017, Defendants filed the instant motion for summary judgment, statement of facts, and supporting brief. (*See* Docs. 83-89, *generally*). Spears did not file a brief in opposition to the motion or a response to Defendants'

factual statement.[2]  Eventually, Spears filed his own motion for summary judgment, but the motion was not accompanied by a factual statement or supporting brief and it does not explain why summary judgment in his favor is warranted.  (*See* Doc. 91, *generally*).[3]  Defendants filed a timely brief in opposition to Spears' motion identifying several of its deficiencies.  (*See* Doc. 94, *generally*).

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."  *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)).  "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law.  A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Santini v. Fuentes*, 795 F.3d

---

[2]    Although Spears did not file a brief or submit evidence in opposition to Defendants' summary judgment motion, I must still analyze the merits of Defendants' motion to determine whether summary judgment is appropriate. *See Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993); *Anchorage Associates v. Virgin Islands Board of Tax Review*, 922 F.2d 168, 174-75 (3d Cir. 1990); *Moultrie v. Luzerne Cnty. Prison*, No. 06-1153, 2008 WL 4748240, at *2 (M.D. Pa. Oct. 27, 2008); *see also Tsosie v. United States*, No. 12-893, 2015 WL 6501245, at *1 (M.D. Pa. Oct. 27, 2015) ("Even if unopposed, summary judgment may only be granted when the moving party shows that it is entitled to a judgment as a matter of law.").

[3]    Based on these failings, Spears' purported motion for summary judgment will be denied for failure to comply with Local Rule 56.1 and because he has failed to demonstrate that he is entitled to judgment as a matter of law.

410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

### III. Discussion

Spears, as stated, has two claims remaining: (1) a Fourth Amendment claim against DeRose for the thrice-daily visual body-cavity searches; and (2) an Eighth Amendment claim against Walton for the March 27, 2013 search. I will address the claims in that order.

### A.      Fourth Amendment Claim Against DeRose.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. In *Parkell v. Danberg*, 833 F.3d 313, 324-25 (3d Cir. 2016), the Third Circuit held that the Fourth Amendment "grants inmates a limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting." The *Parkell* court emphasized that while the Fourth Amendment "applies to bodily searches in prison," the "contours of prisoners' Fourth Amendment rights" are "very narrow." *Id.* at 326. Application of the Fourth Amendment requires

balancing of interests. *See id.*

> "The test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell* [*v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861, 60 L. Ed. 2d (1979)]. "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* Inmate search policies are constitutional if they "str[ike] a reasonable balance between inmate privacy and the needs of the institutions." [*Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 339, 132 S. Ct. 1510, 182 L. Ed. 2d 566 (2012) ("*Florence II*")].
>
> In balancing those interests in the prison context, we must give considerable weight to the "place in which [the search] is conducted" - prisons being "places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct," *Hudson* [*v. Palmer*, 468 U.S. 517, 526, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)], and considerable deference to "the justification for initiating it." *Bell*, 441 U.S. at 559, 99 S. Ct. 1861. "[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence II*, [566 U.S. at 328, 132 S. Ct. 1510]. A regulation "impinging on an inmate's constitutional rights must be upheld if it is reasonably related to legitimate penological interests." *Id.* at [326, 132 S. Ct. 1510] (quotation marks omitted). We recognize that "[t]he task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials." *Id.* at [328, 132 S. Ct. 1510] (quotation marks omitted). Unless there is "substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters." *Id.* (quotation marks omitted).

*Id.*

The Supreme Court in *Bell* upheld a program under which inmates were required to submit to visual body-cavity inspections after every contact visit with a person from outside the prison and that such inspections could be conducted on less than probable cause. *See Bell*, 441 U.S. at 558, 99 S. Ct. 1861. But, as the Third Circuit stressed in *Parkell*, "*Bell* does not categorically uphold all bodily searches in prisons," and each case requires a balancing of interests "taking into account 'the scope of the particular intrusion, the manner in which it is conducted, the justification

8

for initiating it, and the place in which it is conducted.'" *Parkell*, 833 F.3d at 327 (quoting *Bell*, 441 U.S. at 559, 99 S. Ct. 1861).

The "particular intrusion" at issue in *Parkell* involved a policy mandating "visual body-cavity searches" for inmates in the C-Building, which required that "three times <u>every</u> day inmates remove their clothing and submit their anal and genital regions to visual inspection while they squat and cough, whether or not they have had any contact with others." *Id*. at 327 (emphasis in original).[4] Turning to the balancing of interests, the court expressed "no doubt that visual body-cavity searches constituted a significant intrusion." *Id*. Against this, the court considered countervailing security interests. *Id*.

Despite deferential review and the defendants' light burden, the Third Circuit found that the policy was not reasonably related to detecting and deterring contraband. *See id*. The Court reasoned:

> The State Defendants are unable to articulate a single plausible theory as to how inmates in isolation in C-Building would have thrice-daily opportunities to smuggle in contraband from outside their cells or use unsupervised time in their locked cells to transform a harmless object into something dangerous. And we cannot imagine a plausible scenario ourselves. It is undisputed that inmates in isolation in C-Building live in stripped-down cells in which they wear only t-shirts, boxer briefs, and socks, are not permitted to keep rags, towels, or rolls of toilet paper, and are provided with soap and other hygienic items only during their thrice-weekly showers. And according to Parkell's version of events, the credibility of which we do not doubt in the context of summary judgment, he left his isolation cell only three times per week for brief showers and had no human contact while in isolation, except for daily visits from nurses for the limited purpose of dispensing medication (along with, of course, the thrice-daily visual body-cavity searches themselves). He therefore had few, if any, opportunities to obtain contraband - and certainly not three opportunities per day - which distinguishes this case from the searches in *Bell* that took place after visitations involving in-person contact.

---

[4]     The Third Circuit limited its analysis to visual body-cavity searches "and not other more intrusive or less intrusive types of bodily searches, which entail a different balancing of interests." *Parkell*, 833 F.3d at 327.

Parkell's daily visits from nurses and thrice-weekly visits to the showers cannot justify the quantity of searches. It may well be reasonable for VCC to conduct visual body-cavity searches of C-Building inmates after each such visit. But at most, that would justify ten searches per week, not twenty-one. And although the State Defendants have suggested that Parkell's contact with medical personnel while in isolation was more extensive, they conceded at oral argument that the record does not evidence thrice-daily interactions. In any event, in the context of summary judgment, we construe the record in Parkell's favor, crediting the portions that describe only once-daily visits from nurses dispensing medication.

The fact that Parkell, like others in C-Building, was being punished for disciplinary violations does not alter our conclusion. Arguably, it does magnify the State Defendants' security interest, insofar as inmates who have already broken prison rules may be more likely to seek and utilize dangerous contraband. But the reasonable relationship to the search policy is still missing. When dangerous inmates are completely isolated in C-Building, it is the isolation that prevents the smuggling of contraband. Thrice-daily bodily searches have little, if any, value in that context unless the period of complete isolation has somehow been interrupted.

*Id*. at 327-28.

The *Parkell* court, though, underscored the "narrowness" of its holding, noting that "the probability is vanishingly small that an inmate locked in a stripped-down isolation cell in C–Building, once searched, could then obtain contraband during a subsequent eight-hour period involving no human contact." *Id*. at 328. The court further made clear that its holding did not "concern individualized suspicion," and "[r]outine, suspicionless search policies may sweep quite broadly and still be reasonable." *Id*. at 328-29. Nonetheless, the policy at issue swept "too broadly with insufficient justification" as the security interests at issue were "not reasonably advanced by a blanket policy of frequently and intrusively searching inmates who have previously been thoroughly searched and held in a stripped-down isolation cell without human contact ever since." *Id*. at 329. Accordingly, the Third Circuit found the search policy to be an "exaggerated response to security considerations" in violation of the Fourth Amendment. *Id*. at 330.

In the instant motion, Defendants contend that *Parkell* does not preclude the

entry of summary judgment in favor of DeRose on Spears' Fourth Amendment claim for the thrice-daily visual body-cavity searches. (*See* Doc. 89, 9-22). For one, Defendants contend that facts at issue in the matter *sub judice* are markedly different from those in *Parkell* because unlike the categorical strip search policy there, the restrictions on Spears here were unique to him, caused by him, based on his repeated violations of prison rules and escape attempt, and because he could still obtain contraband under his door and through his food tray. (*See id*. at 16-22).

Second, Defendants argue that DeRose is entitled to qualified immunity because "binding precedent must make clear that [he] violated Plaintiff's rights." (*See id*. at 9-16).[5] Qualified immunity applies to DeRose here, argue Defendants, because in 2013 - three years before *Parkell* was decided - "the law was not clear . . . that the Fourth Amendment applied to searches of convicted prisoners." (*Id*. at 13-14).[6] This

---

[5]  However, "it is not necessary that there be binding precedent from [the Third] [C]ircuit,'" "'[i]f the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law.'" *Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211 n.4 (3d Cir. 2001)).

[6]  For the reasons set forth in the text, I need not resolve this claim on qualified immunity grounds based on Spears' failure to exhaust his administrative remedies. I do note the *Parkell* court's observation that most "Courts of Appeals have concluded that the Fourth Amendment has some applicability to bodily searches in prison," and the decisions cited therein all predate 2013. *Parkell*, 833 F.3d at 326 & n.8 (citing *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 42 n.5 (1st Cir. 2009); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 n.2 (6th Cir. 2013); *Bull v. City & Cty. of S.F.*, 595 F.3d 964, 974–75 (9th Cir. 2010) (en banc); *Levine v. Roebuck*, 550 F.3d 684, 687 (8th Cir. 2008); *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006); *Nicholas v. Goord*, 430 F.3d 652, 658 (2d Cir. 2005); *Elliott v. Lynn*, 38 F.3d 188, 191 n.3 (5th Cir. 1994)); *see also Russell v. City of Phila.*, 428 F. App'x 174, 178 (3d Cir. 2011) ("The District Court also correctly noted that inmates maintain a reasonable expectation of privacy in their bodies, and an unreasonable search of the body may therefore be unconstitutional."). Since I do not decide this claim on qualified immunity, I need not address whether Defendants have framed the right at issue at the appropriate level of specificity. *See Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172-73

position is bolstered by a Seventh Circuit decision stating that prisoners do not retain rights under the Fourth Amendment. (*See id*. at 15-16 (citing *Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995)). Defendants thus conclude that a "reasonable Pennsylvania official could have agreed with *Johnson*" that inmates have no Fourth Amendment protections. (*Id*.). And, insofar as such a right was clearly established in 2013, Defendants insist that qualified immunity is still warranted because the contours of the right were not clearly settled at that time. (*See id*. at 16).

Third and finally, Defendants contend that summary judgment in favor of DeRose on the Fourth Amendment claim is mandated because Spears failed to exhaust his administrative remedies with respect to his claim regarding the frequency of the visual body-cavity searches. (*See id*. at 32-33). Because I find that the undisputed facts viewed in the light most favorable to Spears demonstrate that he did not exhaust his claim based on the frequency of the searches, I will grant summary judgment in favor of DeRose on the Fourth Amendment claim.[7]

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before filing suit in court. 42 U.S.C. § 1997e(a). The PLRA "mandates that an inmate exhaust . . . administrative remedies . . . before bringing suit to challenge prison conditions." *Ross v. Blake*, - - - U.S. - - -, 136 S. Ct. 1850, 1854-555, 195 L. Ed. 2d 117 (2016) (quotation omitted); *see also Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) (same).

_____

(3d Cir. 2017) (in addressing the clearly established prong of the qualified immunity analysis, "the right allegedly violated [must be defined] at the appropriate level of specificity," and framed "in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad general proposition.").

[7]     As the claim against DeRose will be disposed of on exhaustion grounds, I do not address Defendants' remaining arguments for summary judgment on this cause of action, *i.e.*, that the visual body-cavity searches here were constitutionally permissible under *Parkell* and/or that DeRose is entitled to qualified immunity.

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). The exhaustion requirement applies equally to inmate civil-rights claims brought under 42 U.S.C. § 1983 or *Bivens*. *Id*. at 524, 122 S. Ct. 983.

A prisoner need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *Ross*, 136 S.Ct. at 1855. An administrative remedy is "'available' [if it] is 'capable of use for the accomplishment of a purpose.'" *Id*. at 1858-59 (quoting *Booth*, 532 U.S. at 737, 121 S. Ct. 1819). There are three circumstances when an administrative remedy is unavailable and the prisoner's duty to exhaust available remedies "does not come into play":

> (1) 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) it is 'so opaque that i[t] becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'

*Shumanis v. Lehigh Cty.*, 675 F. App'x 145, 148 (3d Cir. 2017) (quoting *Ross*, 136 S. Ct. at 1859-60).

The PLRA also mandates "proper exhaustion" of all the agency's deadlines and other procedural rules pertaining to its administrative remedy process. *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004)). "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" as they are "defined . . . by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798

(2007) (quoting *Ngo*, 548 U.S. at 88, 126 S. Ct. 2378). "[I]t is the prison's [administrative remedy] requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218, 127 S. Ct. 910. Failure to comply substantially with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill*, 372 F.3d at 227-32; *see also Williams*, 482 F.3d at 639 (inmate "procedurally defaulted" when he failed to comply with the requirements of the prison's grievance procedures).

Finally, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013).

The Dauphin County Prison grievance procedure has been addressed by this Court before. *See, e.g., Poindexter v. DeRose*, No. 16-282, 2017 WL 4354911, at *3 (M.D. Pa. Sept. 29, 2017) (Nealon, J.); *Almuhsin v. Warden of Dauphin Cty. Prison*, No. 16-365, 2017 WL 895570, at *4 (M.D. Pa. Mar. 7, 2017) (Kane, J.); *Scott v. DeRose*, No. 15-2379, 2016 WL 4440309, at *5 (M.D. Pa. Aug. 23, 2016) (Brann, J.); *Collins v. DeRose*, No. 14-2425, 2016 WL 659104, at *5 (M.D. Pa. Feb. 17, 2016) (Conaboy, J.); *Reilly v. DeRose*, No. 14-1933, 2015 WL 3752188, at *5 (M.D. Pa. June 16, 2015) (Kosik, J.); *Sawyers v. Brown*, No. 12-1694, 2014 WL 407337, at *2 (M.D. Pa. Feb. 3, 2014) (Mariani, J.); *Ortiz v. Prison Bd. Members*, No. 08-2126, 2012 WL 2192256, at *4 (M.D. Pa. June 14, 2012) (Rambo, J.); *R.R. ex rel. Richardson v. Stake*, No. 10-1442, 2011 WL 239830, at *2 n.3 (M.D. Pa. Jan. 24, 2011) (Conner, J.); *Montgomery v. DeRose*, No. 08-2021, 2009 WL 2594079, at *5 (M.D. Pa. Aug. 20, 2009) (Muir, J.). The grievance appeal process that Dauphin County Prison inmates are required to follow

> involves four (4) steps: (1) the submission of a grievance for review and determination by the Warden; (2) an appeal of any decision to the Chairman of the Dauphin County Prison Board of Inspectors; (3) an appeal of the Chairman's decision to the full Dauphin County Prison Board of Inspectors; and (4) an appeal from the Prison Board's decision to the Dauphin County Solicitor.

*Almuhsin*, 2017 WL 895570, at *4 (quoting *Sawyers*, 2014 WL 407337, at *2); (*see also* Defs.' SMF, ¶¶ 55-60 & Ex. "84", 23).

Spears' Fourth Amendment claim against DeRose is subject to the PLRA's exhaustion requirements. *See*, e.g., *Russell v. City of Phila.*, 428 F. App'x 174, 178 (3d Cir. 2011) (affirming grant of summary judgment where the plaintiff failed to properly submit his grievance concerning the search of his person).

Here, it is undisputed that Spears submitted two grievances concerning strip searches. First, on March 21, 2013, Spears filed a grievance raising, *inter alia*, that he was being "strip searched 3x a day." (Defs.' SMF, ¶ 94 & Ex. "11"). It is further undisputed that DeRose denied that grievance on April 2, 2013. (*See id*. at ¶ 95 & Ex. "11"). Spears filed multiple appeals to Haste regarding the April 2, 2013 grievance denial. (*See id*. at ¶ 96 & Exs. "91"-"92"). Yet, it is undisputed that Spears did not address the frequency of the strip searches in his appeal to Haste. (*See id*. at ¶ 96; *see also id*. at Ex. "91" (failing to raise strip search frequency on appeal but noting issues not addressed by DeRose included "c/o's tampering w/ my food; denial of law library; & not getting any sleep due to this mat. restriction I'm on.")). Those appeals were denied by Haste on April 23, 2013 and April 30, 2013. (*See id*. at ¶ 97 & Exs.' "92"-"93"). Defendants do not dispute that Spears appealed Haste's decision to the Prison Board, that Spears referenced in the Prison Board appeal that he was "strip-searched 3x a day", that the Prison Board denied the appeal, that Spears filed an appeal to the Solicitor asserting that the Prison Board did not address the issue regarding all the searches, or that the Solicitor denied the appeal. (*See id*. at ¶ 98 & Exs. "94"-"97").

Second, the undisputed evidence reflects that Spears submitted the grievance he identified as number 31 on April 7, 2013 concerning being woken up at night to be searched. (*See id*. at ¶ 100 and Ex. "86", 37). DeRose denied the grievance, and Spears appealed to Haste because his "complaint was not addressed, that being sleep deprivation." (*Id*. at Ex. "84", 46). Haste denied the appeal on July 2, 2013. (*See id.* at Ex. "87", 4). It is undisputed that Spears appealed this denial to the Prison Board,

referencing grievance number 50, and complaining of the excessive number of strip searches over the previous two monts. (*See id.* at ¶ 105 & Ex. "84", 55-56). Not contested, however, is that the record does not include a grievance number 50 submitted by Spears. (*See id.* at ¶ 106). Also undisputed is the fact that in the denying that appeal the Prison Board made clear that:

> In your underlying grievance and appeal to Commissioner Haste, you limited your complaint to searches that occurred late at night. Your complaint was that the searches interrupted your sleep time. As this is what you complained of and appealed, any other complaints regarding times of searches is not ripe for review. . . .
>
> Because your appeal complains about circumstances not included in your grievance, I find that these complaints are not ripe for review and therefore the Prison Board has directed that your grievance appeal be denied.

(*Id.* at Ex. "88", 9). It is lastly not disputed that Spears' subsequent appeal from that decision was denied by the Solicitor. (*See id.* at ¶¶ 107-108).

Defendants argue that these undisputed facts demonstrate that Spears did not exhaust his Fourth Amendment claim concerning the frequency of searches. (*See* Doc. 89, 32-33). More particularly, Defendants assert that while Spears complained about the frequency of strip searches in grievances, he never did so in an appeal to Haste. (*See id.*). And, even though Spears raised the issue regarding strip search frequency to the Prison Board and the Solicitor, Defendants emphasize that this claim was not preserved because it was not raised to Haste. (*See id.*). Rather, Defendants note that the only complaint taken on appeal to Haste regarding the searches concerned Spears being woken at night to have his cell and person searched. (*See id.*). This, Defendants conclude, does not satisfy the exhaustion requirement with respect to his claim that he was strip searched three times per day. I agree.

The Dauphin County grievance policy requires that an inmate first submit a grievance to either the Warden, Deputy Warden, or a Security Major. (*See* Defs.' SMF, ¶ 57). Spears met this step with respect to his Fourth Amendment frequency of strip searches claim by way of the March 21, 2013 grievance he submitted to DeRose.

(*See id*. at ¶ 94). But, Spears failed to present this issue on appeal to the Prison Board Chairman, *i.e.*, Step 2. Indeed, it is undisputed that Spears never raised on appeal to Haste the denial of his grievance concerning the strip search frequency. (*See id*. at ¶¶ 96-97). Thus, even though Spears subsequently raised those issues before the Prison Board and Solicitor, his failure to preserve his claim at Step 2 means that he did not exhaust the administrative grievance process. *See*, *e.g.*, *Bickel v. Miller*, 446 F. App'x 409, 412 (3d Cir. 2011) ("Proper exhaustion means using all steps provided by the prison so that prison officials address the issues on the merits. . . . Summary judgment was appropriate here because [the plaintiff] failed to come forward with any evidence to rebut the defendants' showing that he failed to complete all steps of the grievance process with respect to the majority of his claims."); *see also Quinn v. Eshem*, No. 16-3272, 2016 WL 9709498, at *2 (6th Cir. Dec. 20, 2016) (district court properly granted summary judgment where the plaintiff skipped the second step in the inmate grievance process); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) ("a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court; but a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating."). Further, Spears' grievances and appeals concerning sleep deprivation did not satisfy his obligation to exhaust his claim with respect to the thrice-daily visual body-cavity searches. *See*, *e.g.*, *Russell*, 428 F. App'x at 178 (claim was not properly exhausted where the plaintiff "filed several grievances in the prison taking issue with his prison job assignment and time in administrative segregation, [but] none of Russell's grievances concerned the search of his cell or person."). Defendants have satisfied their burden of establishing that Spears failed to exhaust his Fourth Amendment claim, and Spears has failed to show that any such administrative remedies were unavailable to him. *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). DeRose is entitled to summary judgment on Spears' Fourth Amendment claim.

**B.    Eighth Amendment Claim Against Walton.**

The Eighth Amendment guarantees the right to be free from "cruel and unusual punishments." U.S. Const. amend. VIII. "A claim regarding prison conditions 'does not rise to the level of an Eighth Amendment violation unless: (1) the prison official deprived the prisoner of the minimal civilized measure of life's necessities; and (2) the prison official acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to her future health.'" *Parkell*, 833 F.3d at 335 (quoting *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)). While a visual body cavity search can violate the Eighth Amendment, such a search amounts to cruel and unusual punish only if it is "'undertaken maliciously or for the purposes of sexually abusing an inmate.'" *Id*. at 336 (quoting *Crawford v. Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015)).

Defendants argue that Walton is entitled to summary judgment on the Eighth Amendment claim regarding the March 27, 2013 visual body-cavity search for two reasons. (*See* Doc. 89, 22-32). First, Defendants cite cases for the proposition that derogatory comments and/or laughing during a strip search does not by itself amount to a constitutional violation. (*See id*. at 25-27). Thus, they conclude that Walton did not violate Spears' constitutional rights, so he is entitled to qualified immunity on the Eighth Amendment claim. (*See id*.). Second, Defendants argue that the Eighth Amendment claim was not properly exhausted because Spears complained only about the throwing of his clothing in toilet water and not about Walton's comments and/or the manner in which the search was conducted. (*See id*. at 28-32). Summary judgment is properly granted in favor of Walton both because Spears did not exhaust his Eighth Amendment claim and because the undisputed evidence fails to demonstrate that the challenged search amounted to cruel and unusual punishment.

Taking Walton's second ground for summary judgment first, Spears failed to exhaust his administrative remedies. It is undisputed that Spears submitted a grievance concerning his allegation that Walton threw his clothing in toilet water.

18

(*See* Defs.' SMF, ¶¶ 61-72). It is further not contested that the Step Two appeal about the March 27, 2013 incident was limited to Spears' clothing be placed in toilet water. (*See id*. at ¶¶ 73-78). Spears subsequently appealed to the Prison Board, but he did not even mention Walton or his property being placed in the dirty water. (*See id*. at ¶¶ 79-81). And, it is undisputed that after the Prison Board denied the appeal, Spears took an appeal to the Solicitor raising only the issue of the clothing in the toilet water. (*See id*. at ¶¶ 84-88).

Spears did not exhaust his administrative remedies regarding the March 27, 2013 search by Walton or his comments related thereto. Spears' grievances (and subsequent appeals) never addressed the appropriateness of the strip search itself or any derogatory comments made during that search. Instead, the grievance was limited to the issue of Walton placing Spears' clothing in toilet water. On these facts, Spears did not grieve or appeal his claim relating to the improper nature of the March 27, 2013 search. *See*, *e.g.*, *Russell*, 428 F. App'x at 178 (claim was not properly exhausted where the plaintiff "filed several grievances in the prison taking issue with his prison job assignment and time in administrative segregation, [but] none of Russell's grievances concerned the search of his cell or person."); *Boyd v. United States*, 396 F. App'x 793, 796 (3d Cir. 2010) (to proceed in federal court, inmate "must first have exhausted administrative remedies for that claim"); *Heleva v. Kunkle*, 315 F. App'x 373, 376 (3d Cir. 2008); *Snow v. United States*, No. 13-789, 2014 WL 4384649, at *12-16 (M.D. Pa. Sept. 4, 2014). Thus, the claim was not exhausted.

In addition, the undisputed record evidence fails to show Walton engaged in malicious behavior as required for an Eighth Amendment violation related to the strip search. *See Parkell*. at 336. Viewing the evidence in the light most favorable to Spears, Walton's comments during the March 27, 2013 search were no doubt offensive and inappropriate. But these statements do not amount to malicious behavior violative of the Eighth Amendment. *See*, *e.g.*, Johnson v. Evans, 84 F. App'x 828, 829 (9th Cir. 2003) (use of crude language during strip search and visual body cavity search did not

19

violate the Eighth Amendment); *Somers v. Thurman*, 109 F.3d 614, 622-23 (9th Cir. 1997) (joking, pointing, and gawking during visual body-cavity searches did not violate the Eighth Amendment); *Smith v. Trapp*, No. 14-3220, 2018 WL 587230, at *5 (D. Kan. Jan. 29, 2018) (noting the lack of authority for the proposition that verbal harassment is actionable under the Eighth Amendment simply because it occurred during a strip search); *Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 500 (S.D.N.Y. 2014) ("alleged verbal harassment during the strip search does not cause the search to become unconstitutional"); *accord Washington v. Rozich*, 734 F. App'x 798, 801 (3d Cir. May 2018) ("Verbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment."); *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) ("most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment"); *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment."); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2005) ("allegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983"); *Roden v. Sowders*, 84 F. App'x 611, 613 (6th Cir. 2003) (laughter during strip search did not violate the Eighth Amendment). Further, the record reflects that the search was relatively brief and took place only after maintenance left Spears' cell. (*See* Defs.' SMF, ¶¶ 48-49). This also does not rise to the level of cruel and unusual punishment. *See*, *e.g.*, *Parkell*, 833 F.3d at 336; *Riley v. Kuzar*, No. 17-516, 2017 WL 4931691, at *4 (M.D. Pa. Oct. 31, 2017) (prisoner did not state an Eighth Amendment claim where he "did not allege that the strip searches were anything other than routine searches"). On the undisputed facts, Walton is entitled to summary judgment on Spears' Eighth Amendment claim.

## IV. Conclusion

For the above stated reasons, Defendants' motion for summary judgment will be granted.

An appropriate order follows.

October 31, 2018
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge